Thomas E Lauria
State Bar No. 11998025
J. Christopher Shore (pending admission pro hac vice)
John K. Cunningham (pending admission pro hac vice)
Richard Kebrdle (pending admission pro hac vice)
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 819-8200
Facsimile:   (212) 354-8113

Jeff P. Prostok
State Bar No. 16352500
Lynda L. Lankford
FORSHEY & PROSTOK LLP
777 Main St., Suite 1290
Ft. Worth, TX  76102
Telephone:  (817) 877-8855
Facsimile:   (817) 877-4151

ATTORNEYS FOR THE PETITIONING CREDITORS AND
THE AD HOC GROUP OF VITRO NOTEHOLDERS

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| In re:<br><br>VITRO ASSET CORP., VITRO CHEMICALS, FIBERS & MINING, LLC, VITRO AMERICA, LLC, TROPER SERVICES, INC., VITRO PACKAGING, LLC, VVP HOLDINGS, LLC, AMSILCO HOLDINGS, INC., B.B.O. HOLDINGS, INC., BINSWANGER GLASS CO, CRISA CORP., VVP FINANCE CORP., VVP AUTO GLASS, INC., V-MX HOLDINGS, LLC, SUPER SKY PRODUCTS, INC., AND SUPER SKY INTERNATIONAL, INC.,<br><br>Debtors. | Chapter 11 Case (Involuntary)<br><br>Case Nos. 10-47470 (RFN-11), 10-47472 (DML-11), 10-47473 (DML-11), 10-47474 (RFN-11), 10-47475 (DML-11), 10-47477 (DML-11), 10-47478 (RFN-11), 10-47479 (DML-11), 10-47480 (RFN-11), 10-47481 (RFN-11), 10-47482 (DML-11), 10-47483 (DML-11), 10-47484 (RFN-11), 10-47485 (DML-11), 10-47486 (RFN-11)<br><br>Joint Administration Pending<br><br>Hearing Date and Time:<br>November 23, 2010 at 9:00 a.m.<br>Objection Deadline:<br>November 23, 2010 at 9:00 a.m. |

## EMERGENCY MOTION OF THE PETITIONING CREDITORS
## UNDER SECTIONS 105(a) AND 303(f) OF THE BANKRUPTCY CODE FOR
## AN ORDER CONDITIONING THE DEBTORS' USE OF PROPERTY

TO THE HONORABLE RUSSELL F. NELMS,
UNITED STATES BANKRUPTCY JUDGE:

Knighthead Master Fund, L.P., Brookville Horizons Fund, L.P., Davidson

Kempner Distressed Opportunities Fund L.P., and Lord Abbett Bond-Debenture Fund, Inc.

(collectively, the "Movants"), as creditors and parties in interest in the above-captioned chapter

11 cases, file this motion (the "Motion") for entry of an order pursuant to sections 105(a) and

303(f) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"),

Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

and Rules 2002.1 and 6004.1 of the Local Bankruptcy Rules of the United States Bankruptcy

Court for the Northern District of Texas (the "Local Rules"), requiring that, pending an

adjudication of the petitions in these cases, section 363 of the Bankruptcy Code apply (i) to

certain discrete transfers, uses, sales or leases of property of Vitro Asset Corp. or any of its

affiliated debtors (collectively, the "Debtors"), which could materially alter the Debtors' assets

and liabilities or affect the jurisdiction of this Court over the Debtors' estates, and (ii) to any

extraterritorial transfer, sale, distribution, acquisition, trade, exchange or other disposition of any

of the Debtors' respective assets or property currently located within the territorial jurisdiction of

the United States, in either case absent further order of the Court.

## PRELIMINARY STATEMENT

1.      Movants are holders (the "Noteholders") of Senior Notes (the "Vitro

Notes") issued by the Debtors' Mexican parent, Vitro S.A.B. de C.V. ("Vitro"), and guaranteed

by the Debtors.  By this Motion, Movants seek to protect this Court's jurisdiction over the

Debtors and to prevent the Debtors from engaging in certain transactions that would be

prejudicial to creditors pending a hearing on the petitions.  Essentially, Movants seek to have this

Court require prior court approval under section 363 of the Bankruptcy Code for (i) any transfer

of assets currently in the United States to a location outside the U.S. without significant

protections to ensure the return of those assets and (ii) any action which would materially affect the Debtors' capital structure including (a) the incurrence or exchange of debt or issuance of new equity outside of the ordinary course of the Debtors' businesses or (b) the participation of the Debtors in any out-of-court or in-court restructuring of its affiliates. Importantly, Movants do not seek to have the Court interfere in any way with the normal business operations of the Debtors nor to prevent any transaction that this Court might approve on notice to the Debtors' creditors. The simple fact, however, is that the relations between the Debtors, their Mexican parent entity and their respective third-party creditors has devolved to such an extent that a material risk exists that the Debtors will take affirmative actions to defeat the jurisdiction of this Court and the application of U.S. bankruptcy laws to over $1.2 billion in public debt raised in the U.S. that is indisputably owed by the Debtors, each of which are located and operating in the U.S. In particular, Vitro and the Debtors have been in payment default for over a year and Vitro has given every indication that it will use all available means, including the inappropriate incurrence of highly suspect debts and the voting of alleged intercompany claims, to avoid paying its legitimate debts to U.S. creditors.

2.      As set forth herein, section 303(f) of the Bankruptcy Code permits a Bankruptcy Court to exercise oversight over an alleged debtor's operations in the "gap period" between the filing and adjudication of an involuntary petition. Movants respectfully submit that the present risks – potential attacks on this Court's jurisdiction and circumvention of the Bankruptcy Code and applicable U.S. laws – are exactly the ones that Congress empowered a bankruptcy court to protect pending adjudication of an involuntary petition. Such protections are even more appropriate where, as here, there is no question that the proposed debtors are and should be the subject of plenary chapter 11 cases. As such, for all the reasons set forth herein,

the Court should grant the limited relief requested by the Motion, without prejudice to the rights of the Debtors to make their case at a later time as to why any extraordinary transactions must be undertaken before any orders for relief are entered in these cases.

## PROCEDURAL BACKGROUND

3.      On November 17, 2010 (the "Petition Date"), the Movants filed involuntary petitions against each of the Debtors in this Court pursuant to section 303(a) of the Bankruptcy Code.

4.      The Debtors continue to manage and operate their businesses pursuant to section 303(f) of the Bankruptcy Code.

5.      No trustee or examiner has been requested or appointed in any of the Debtors' cases.

6.      To the knowledge of the Movants, prior to the Petition Date, no bankruptcy insolvency proceedings have been commenced by, or on behalf of, the Debtors in the United States, Mexico or any other jurisdiction.

## FACTUAL BACKGROUND

7.      Vitro (and together with its affiliated debtors and non-debtor entities, the "Company") is a corporation organized under the laws of Mexico and is a holding company that conducts substantially all of its operations through its subsidiaries both outside and within the United States. Vitro was incorporated in Mexico in 1909 and, based on its consolidated net sales in 2007, has represented that it is the largest manufacturer of glass containers and flat glass in Mexico. Each Debtor is a subsidiary of Vitro that is domiciled in the United States in one of various states, including in Texas. Each Debtor has unconditionally guaranteed the Vitro Notes as described more fully below.

8.      Movants hold in the aggregate at least $75 million in principal amount of the Vitro Notes. The Movants are members of the Ad Hoc Group of Vitro Noteholders (the "Ad Hoc Noteholder Group") which holds or controls in the aggregate over $600 million in principal amount of Vitro Notes.

9.      Vitro's liabilities include, but are not limited to, the Vitro Notes, which consist of over $1.2 billion in principal amount of senior unsecured notes outstanding, denominated as follows: (i) $300 million of 8.625% Senior Notes due 2012 (the "2012 Notes"), (ii) $216 million of 11.750% Senior Notes due 2013 (the "2013 Notes"), and (iii) $700 million of 9.125% Senior Notes due 2017 (the "2017 Notes"). Vitro issued each series of Vitro Notes to the public in the United States and is a reporting company with respect to each such series pursuant to section 15(g) of the Securities Exchange Act of 1934.[1] Each of the Debtors executed an unconditional guaranty of Vitro's obligations in respect of the Vitro Notes pursuant to the indentures governing the Vitro Notes. The indentures for the Vitro Notes are governed under New York law.

10.     In January 2009, Vitro announced that it would no longer make scheduled interest payments on the Vitro Notes and would instead seek to restructure its debts with its creditors. Vitro has since refused to make four scheduled interest payments for each series of the Vitro Notes. As a result, each series of the Vitro Notes has been in default for well over a year, and Vitro has made no indication that it intends to resume making any payments on the Vitro Notes.

---

[1]      As discussed further below, perhaps in an attempt to limit its jurisdictional contacts with the United States, Vitro has recently applied to terminate its SEC (defined below) reporting obligations, see Form 6-K, Sept. 8, 2010, attached hereto as Ex. A, and has refused to comply with SEC directives to file its Annual Report and other materials.

11.     Following the January 2009 interest payment suspension announcement, several noteholders formed the Ad Hoc Noteholder Group in February 2009 and engaged legal counsel and a financial advisor to aid in negotiations with Vitro and its advisors. Although the Noteholders have actively sought to negotiate a consensual and fair restructuring, Vitro and its subsidiary Debtors have shown a persistent unwillingness to negotiate with the Noteholders in good faith and on a level playing field. Vitro's refusal to engage substantively and realistically has substantially harmed the Noteholders, as Vitro has already failed to pay any of the over $300 million in past-due interest owing to them or the over $1.2 billion of accelerated principal. Vitro has to date, however, continued operating its businesses without any interference by the Noteholders.

12.     In January 2010, members of the Vitro Noteholders, holding more than 25% of the 2012 Notes and the 2017 Notes, accelerated the 2012 Notes and the 2017 Notes pursuant to provisions in these respective indentures. See Form 6-K, Jan. 4, 2010, attached hereto as Ex. B.

13.     Vitro's intransigence has now escalated to the point that these involuntary proceedings are absolutely necessary. As an example, on or about August 30, 2010, the Vitro Noteholders learned that Vitro was actively manipulating its capital structure in a way that violates its duties to creditors. Specifically, for more than a year, certain Vitro subsidiaries were engaged in litigation with several holders of derivative financial instrument claims ("DFI Claims") in State Supreme Court in New York City. A third party, Fintech Investments Ltd. or an affiliated company, which had a pre-existing relationship with Vitro, purchased a majority of the DFI Claims and then agreed to dismiss them in exchange for one or more promissory notes issued by Vitro and/or its affiliates and guaranteed by certain of Vitro's subsidiaries. See Letter

from J. Cunningham to D. Dunne, et al., Sept. 1, 2010 (hereinafter "Cunningham Letter"),

attached hereto as Ex. C.  Importantly, however, Vitro was not a party to most – if any – of the

DFI Claims; the only party common to all claims was a subsidiary of Vitro, Vitro Envases

Norteamerica, S.A. de C.V.  Id.  Essentially, the Company engaged in questionable transactions

that purport to elevate those claims on par with the Vitro Notes.  Counsel for the Vitro

Noteholders contacted Vitro's counsel to explain its understanding of the transaction and request

additional information.  Id.  Counsel for Vitro never responded to the Vitro Noteholders' request

for information, but the basic facts of the settlement were subsequently corroborated by a Vitro

Press Release.  See Form 6-K, Sept. 7, 2010, attached hereto as Ex. D.

       14.     On November 1, 2010, the Company launched the Tender Offer,

Exchange Offer and Consent Solicitation (the "Solicitation") seeking to implement a pre-

packaged reorganization plan in Mexico (the "Concurso Plan") under the Mexican Business

Reorganization Act (Ley De Concursos Mercantiles) to force the Vitro Noteholders to accept

these lesser terms.  See Form T-3, Nov. 1, 2010, attached hereto as Ex. E.  Pursuant to the

Solicitation, the Company is (i) proposing an exchange offer and soliciting consents to an in-

court restructuring through a Concurso Plan and (ii) offering to purchase for cash (the "Tender

Offer") the maximum aggregate principal amount of Vitro Notes that can be purchased for

$100,000,000 at a purchase price per $1,000 principal amount equal to the clearing price.  As

part of the proposed Concurso Plan to implement the restructuring, Vitro proposes to exchange

all of its outstanding debt, including the outstanding Vitro Notes and claims relating to derivative

financial instruments, for the following, on a pro rata basis:

- $850 million in aggregate principal amount of new notes (the "New 2019 Notes");
- $100 million in aggregate principal amount of newly issued mandatory
  convertible debentures (the "New MCDs" and, together with the 2019 Notes, the

"New Notes"), which will mandatorily convert into 15.0% of the Company's
equity if not paid in full at maturity;

- A cash payment (the "Restructuring Cash Payment") of the amount remaining,
  out of $75 million deposited in a Mexican trust, after making a consent payment
  pursuant to the exchange offer and consent solicitation[2]; and

- A restructuring fee (the "Restructuring Fee"), in cash, based on the issue dates of
  the New Notes.

15.    Importantly, Vitro intends to seek to extinguish the subsidiary guaranties
of the Vitro Notes, including the guaranties by the Debtors, pursuant to the Concurso Plan,
without filing bankruptcy proceedings for any of those entities. Second Amendment, Annex A at
A-16.

16.    On September 8, 2010, Vitro attempted to terminate its U.S. Securities and
Exchange Commission (the "SEC") registration in the U.S. See Form 15F, Sept. 8, 2010. On
November 9, 2010, the SEC filed a letter stating that Vitro must withdraw its Form 15 or file an
Annual Report and all other filings necessary to comply with the Securities Exchange Act (the
"SEC Letter"), attached hereto as Ex. F. In the SEC Letter, the SEC informed Vitro that it must
withdraw its Form 15 or file its Annual Report and all other filings necessary to comply with the
Securities Exchange Act. Notwithstanding this explicit direction from the SEC, Vitro has not
filed its Annual Report on Form 20-F or any other additional disclosure materials necessary to
comply with its reporting obligations and, instead, has continued pursuing the Exchange Offer
and Consent Solicitation without reference to the SEC Letter.

17.    On November 12, 2010, the Company filed Amendment No. 1 to Form T-
3 (the "First Amendment"), attached hereto as Ex. G, and Amendment No. 2 to Form T-3 (the
"Second Amendment"), attached hereto as Ex. H, in which the Company disclosed alleged

---

[2]    Pursuant to the express terms of the Solicitation, the Restructuring Cash Payment will only be made to
those holders of Vitro Notes who consent to the Concurso Plan. Solicitation at 2.

intercompany claims against Vitro of over $1.91 billion.  Neither the First Amendment nor the

Second Amendment references the SEC Letter or the SEC's direction to Vitro to comply with its

reporting obligations.

## JURISDICTION

18.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

19.    By this Motion, the Movants  request entry of an order pursuant to

sections 105(a) and 303(f) of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004 and Local

Rules 2002.1 and 6004.1, (i) preventing certain specified transfers, uses, sales or leases of

property or interests of the Debtors, which could materially alter the Debtors' current assets and

liabilities, and (ii) prohibiting any extraterritorial transfer, sale, distribution, acquisition, trade,

exchange or other disposition of any of the Debtors' respective assets or property currently

located within the territorial jurisdiction of the United States, in either case absent a showing

under section 363 of the Bankruptcy Code and further order of the Court.[3]  A proposed form of

order is attached hereto as Exhibit A.

## BASIS FOR RELIEF

### Governing Law

20.    While section 303(a) of the Bankruptcy Code permits a party to initiate an

involuntary bankruptcy case against a debtor, section 303(f) carves out a "gap" period during

---

[3]      Although pursuant to an agreement between the parties in that case, this Court has previously granted
similar relief to that requested in this Motion.  See, e.g., In re Am. Housing Fdn., Case No. 09-20232 (Bankr. N.D.
Tex. May 11, 2009) (entering an agreed order granting motion to restrict alleged debtor's disposition of deposited
funds under section 303(f)), attached hereto as Ex. I.

which a debtor who is the subject of an involuntary case may conduct its business "as if an

involuntary case . . . had not been commenced."[4] 11 U.S.C. § 303; see also In re Brooklyn

Overall Co., Inc., 57 B.R. 999, 1002 (Bankr. E.D.N.Y. 1986). This gap period lasts "until an

order for relief" has been entered by the court, and during this time the debtor is expressly

permitted to "dispose of property." 11 U.S.C. § 303(f). Therefore, under normal circumstances

a debtor in involuntary bankruptcy proceedings may continue operating its business without

restriction, see In re Williams Contract Furniture, Inc., 148 B.R. 799, 803 (Bankr. E.D. Va.

1992), and can likewise potentially dissipate assets without judicial scrutiny.

21.     Section 303(f) provides a mechanism to address that concern.

Specifically, the statute provides an exception to the debtor's general ability to operate without

court oversight, stating that the debtor may do so "except to the extent that the court orders

otherwise." 11 U.S.C. § 303. By its terms, the statute imposes no qualifications on the court's

authority to restrict the debtor's conduct; it is also silent regarding when a court should grant

relief and what type of relief may be granted. See id. The legislative history of the statute,

however, makes clear that a primary purpose of the exception is to protect creditors:

> The court is permitted, however, to control the debtor's powers
> under this subsection by appropriate orders, such as where there is
> a fear that the debtor may attempt to abscond with assets, dispose
> of them at less than their fair market value, or dismantle his
> business, all to the detriment of the debtor's creditors.

H.R.Rep. 95-595, 95th Cong., 1st Sess. 323 (1977); Senate Rep. No. 95-989, 95th Cong., 2d

Sess. 33 (1978), 1978 U.S.C.C.A.N. 5787, 6279, 5819) (hereinafter the "Legislative History");

see also In re Hodes, 402 F.3d 1005, 1009 (10th Cir. 2005) (holding that "the court may prevent

---

[4]     Subsection (f) reads in full: "Notwithstanding section 363 of this title, except to the extent that the court orders otherwise, and until an order for relief in the case, any business of the debtor may continue to operate, and the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced." 11 U.S.C. § 303(f).

a debtor from controlling an asset during the 'gap period' between the filing of the involuntary

petition and the entry of an order for relief"). Notably, the use of "such as" in the legislative

history suggests that this is only one example of where an order of relief under section 303(f) is

"appropriate," and it should not be viewed as an exhaustive list of when the exception should be

applied.

22.     Consistent with the Legislative History, courts have observed that the

authority granted to them to "order[] otherwise" is intended to be exercised to prevent debtors

from harming creditors' interests in the gap period. See, e.g., Wilson v. Davis, 62 B.R. 43, 46

(E.D. Tenn. 1985) (statute "permits the Bankruptcy Court to stay any business transactions it

fears will jeopardize the rights of creditors"); In re Greenwalt, 48 B.R. 804, 808 (D. Colo. 1985)

("debtor may not abscond with assets or dispose of them in some manner detrimental to the

debtor's creditors") (citing the Legislative History); In re Gaudreault, 315 B.R. 1, 5 (Bankr. D.

Mass. 2004) (citing Wilson, 62 B.R. at 46). This position is supported by Collier on Bankruptcy,

which provides that courts may limit a debtor's control of its assets if the debtor is "acting in a

manner that suggests that the assets of the estate will be disposed of to the detriment of

creditors." See Collier on Bankruptcy ¶ 303.23[1] (Alan N. Resnick & Henry J. Sommer eds.,

16th ed.). Thus, courts may – and should – exercise their authority under section 303(f) of the

Bankruptcy Code to protect creditors during the gap period where there is a risk that a debtor

may improperly dispose of its assets or otherwise prejudice creditors without justification.

Indeed, without proper oversight during the gap period, a debtor could transfer or dispose of

substantially all of its assets and severely harm its creditors' chances of obtaining any recovery.

23.     Although there is limited case law in which parties have moved for relief

under section 303(f), precedent for granting such relief certainly exists. See, e.g., In re Rush, 7

B.R. 579, 580 (Bankr. N.D. Ala. 1980) (ordering debtor to file a bond for $200,000 "to

indemnify the estate . . . against loss, depletion, or diminution of the property or assets of the

estate in this case by any negligent, indifferent, or willful act of the debtor"). Indeed, Judge

Lynn recently invoked his authority under section 303(f) and ordered that a debtor could not

continue to operate as if the involuntary proceeding had not been filed, instead imposing on the

debtor a duty to act "in a fashion consistent with the fiduciary responsibilities of debtors-in-

possession." In re Tex. Rangers Baseball Partners, 434 B.R. 393, 405 (Bankr. N.D. Tex. 2010).

Additionally, at least one other court in the Fifth Circuit has recognized the risk to creditors

posed by a debtor's freedom to operate during the gap period after commencement of an

involuntary case. See In re All Media Props., Inc., 5 B.R. 126, 134 (Bankr. S.D. Tex. 1980)

(citing section 303(f) and noting that involuntary proceedings should be tried promptly "to

prevent the debtor from wasting its assets"). Such cases generally arise where there is a threat of

injury to a creditor's rights with respect to a debtor's assets. For example, in In re Bluebonnet

Feeds, L.P., 2008 WL 5157453, at *2 (Bankr. E.D. Okla. Oct. 2, 2008), the court issued an order

prohibiting the debtor from transferring assets valued at more than $1000. In ordering this relief,

the court relied on evidence that the debtor had refused to pay its debts and that it had engaged in

a questionable transfer of assets to another entity that was believed to have a common ownership

with the debtor. Id. at *1.

24.     In In re C.W. Mining Co., the court prohibited the debtor from engaging in

transactions outside the ordinary course of its business without the court's permission, ordering

(as requested here) that the provisions of section 363 applied to any future such actions. No. 08-

20105, 2008 WL 3539795, at *3-4 (Bankr. D. Utah Aug. 7, 2008). In that case, a debtor was

subject to a prepetition supplemental order in aid of enforcement of a judgment that restricted its

ability to transfer or dispose of assets. Id. at *1. The court entered this supplemental order based

on a finding of significant risk that there would be an attempt to transfer assets to the detriment

of judgment creditors. Id. The court noted that when the involuntary petition was filed,

however, the debtor obtained the benefit of the "gap period" and, absent an immediate filing of a

section 303(f) motion for the court to restrict the debtor's transactions, the debtor's right to use,

acquire or dispose of property inside the ordinary course of business was restored. Id. at *2-3.

While the creditors could not stop the debtor's actions in the gap period prior to its order, the

court did in fact grant, pursuant to section 303(f), prospective restrictions on such transfers. Id.

at *4.

**An Injunction is Needed Here to Protect Creditors and Preserve
the Court's Jurisdiction Over the Debtors and Their Assets**

25.     The international nature of this case, unlike many other involuntary cases,

presents potentially thorny jurisdictional issues that the Court needs to address prior to an entry

of an order for relief for any of the Debtors. First, it appears that Vitro and its non-U.S.

subsidiaries frequently conduct business with the Debtors and, in connection therewith, move

assets back and forth over the U.S. border. To the extent the assets move outside the U.S., the

risk exists that the Court may lose effective control over property of the Debtors' estates. As

such, the Court should condition any transfer of any asset of the Debtors outside the United

States on either a broad consent to jurisdiction by this Court over the entities involved in the

transfer or prior approval of this Court under section 363, on shortened notice if necessary.

Second, Vitro has initiated the Solicitation on the Vitro Notes, confirming its intent to enter into

transactions that purport to materially alter its and the Debtors' prepetition capital structure.

This Court should, therefore, enjoin the Debtors' participation in any way in the Solicitation or

any other outside of the ordinary course transaction, pending authorization of this Court under

section 363.  At that time, this Court can address any issues with respect to its continuing

jurisdiction.

      26.     In both instances, the concern centers around the Court's ability to

maintain jurisdiction over the Debtors and their businesses pending a determination of the

pending petitions.  We are unaware of any cases that address maintaining the Court's jurisdiction

during the gap period under similar circumstances.  However, the ability of a Bankruptcy Court

to maintain jurisdiction over a debtor and its property is fundamental to the operation of the

Bankruptcy Code.  See In re Mirant Corp., 299 B.R. 152, 166 (Bankr. N.D. Tex. 2003), vacated,

4-03-CV-1242-A, 4:03-CV-944-A, 2004 WL 1621186 (N.D. Tex. Jan. 6, 2004)), aff'd in part

and reversed in part, 378 F.3d 511 (5th Cir. 2004).

**This Court Should Condition Extra-Territorial**
**Transfers on Further Order of the Court**

      27.     With respect to the concern over asset location, if the Debtors are

permitted to transfer their United States-based assets without first seeking the Court's approval,

the risk that the assets will be moved beyond the Court's jurisdiction is a real one.  Vitro is a

Mexican entity with substantial assets and subsidiaries in Mexico.  Because of its extensive ties

to Mexico, it is not unreasonable to believe that the Debtors will take action, while the

involuntary petitions are pending, to transfer assets to an entity outside of the United States.

Indeed, Vitro's recent behavior suggests that its intent is to remove itself from the jurisdiction of

the U.S. courts.

      28.     Furthermore, if Vitro transfers assets outside the United States, the Court

might then be unable "to prevent the debtor from wasting its assets."  In re All Media Props.,

Inc., 5 B.R. at 134.  This possibility gives rise to a legitimate "fear that the debtor may [act] . . .

to the detriment of the debtor's creditors."  See Legislative History.  Vitro's recent conduct only

increases the concern that, if the Motion is not granted, Vitro will "jeopardize the rights of [its]

creditors" by attempting to avoid the Court's jurisdiction. Wilson, 62 B.R. at 46. Indeed, Vitro

has already attempted to de-register its equity and the Vitro Notes, further suggesting an effort to

distance itself from the United States now that it must restructure its U.S. debts. As such, this

Court should condition any cross-border transfer on a showing under section 363 of the

Bankruptcy Code as to the legitimate business purpose of the transaction.

**The Court Should Condition Any Attempts to Restructure
the Debtors' Capital Structure on Further Order of the Court**

29. Vitro also recently commenced the Solicitation, for which it has solicited

consents in an effort to undercut any U.S. proceedings and restructure U.S. debts in a non-U.S.

proceeding. See Form T-3. In connection therewith, Vitro is plainly seeking to obtain consent to

restructure the Debtors' obligations to the Noteholders under the subsidiary guaranties under the

Indentures. Second Amendment, Annex A at A-16 ("Vitro shall be obligated to make and cause

all of the Guarantors to agree to the terms of this Agreement, once approved by the Judge, and

the Restructuring Instruments pursuant to what is set forth in the Description of the Notes,

through their signature to the Restructuring Instruments."). The Debtors' participation, in any

way, in these transactions is clearly a non-ordinary course of business settlement of any claims

under the Vitro Notes and, as a result, would be a violation of sections 362, 363 and 1129 of the

Bankruptcy Code and Bankruptcy Rule 9019 if made applicable. See Jewel Recovery, L.P. v.

Gordon, 196 B.R. 348, 352 (N.D. Tex. 1996) (noting that any "payments received . . . in

connection with the tender offer constitute settlement payments made by or to a financial

institution," but nevertheless finding that the application of section 546(e) of the Bankruptcy

Code was not consistent with the statutory scheme); see also Members Interior Constr., Inc. v.

Leader Constr. Co., 124 N.C. App. 121, 125 (1996) ("unconditional payment offers are, by definition, not tender offers as tender offers are made in full and final settlement of a claim").

30.     The Debtors should also be prohibited from utilizing intercompany claims to manufacture support for the Solicitation and restructuring of the Debtors' debt in the Concurso process.  Foreshadowing such an effort, the Solicitation purports to identify intercompany claims totaling over $1.9 billion.  First Amendment, Annex A at A-4 ("Pursuant to its accounting records, as of September 30, 2010 it has . . . (c) direct or indirect subsidiary liabilities, for an amount of $23,872,000,000.00 (twenty three billion eight hundred and seventy two million pesos 00/100 Mexican Currency), equivalent to US$1,910,000,000.00 (one billion nine hundred and ten million dollars 00/100 Currency of the United States of America").  To date, neither Vitro nor the Debtors have offered any explanation as to the legitimacy of these alleged claims and only disclosed this alleged amount publicly for the first time on November 12, 2010.  See First Amendment.

31.     In order to ensure that creditors are protected, then, the Movants ask only that the Debtors obtain approval from the Court before participating in any way in the Solicitation, the Concurso Plan, or any other actions that materially affect the Debtors' prepetition capital structure.  Such relief does not affect the Debtors' operations in the ordinary course, nor does it even preclude them entirely from carrying out extraordinary measures.  It merely affords the Court an opportunity first to satisfy itself, after providing Movants with notice and an opportunity to be heard, that such actions would not impermissibly – and irreparably – infringe the rights of creditors or deprive the Court of jurisdiction.

32.     Therefore, the Movants respectfully request that this Court condition the Debtors' ability to use, transfer or dispose of their property during the gap period pursuant to the

requirements of section 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004 to prevent a dissipation of the Debtors' assets.

## **NOTICE**

33.     Notice of this Motion has been provided to the Debtors.  The Movants submit that under the circumstances no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Movants respectfully request (i) entry of an order in the form

attached hereto as Exhibit "1" and (ii) such other and further relief as this Court shall deem

necessary.

Dated:  Fort Worth, Texas
        November 18, 2010

Jeff P. Prostok
State Bar No.  16352500
FORSHEY & PROSTOK LLP
777 Main St., Suite 1290
Ft. Worth, TX  76102
(817) 877-8855


By  /s/ Jeff P. Prostok
    Jeff P. Prostok

        -and-

Thomas E Lauria
State Bar No. 11998025
J. Christopher Shore (pending admission pro hac vice)
John K. Cunningham (pending admission pro hac vice)
Richard Kebrdle (pending admission pro hac vice)
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 819-8200

ATTORNEYS FOR THE PETITIONING
CREDITORS AND THE AD HOC GROUP
OF VITRO NOTEHOLDERS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document (with exhibits) was served via ECF electronic Notice, if available, and upon the parties listed below via email, on November 18, 2010.

**Counsel for the Alleged Debtors:**
Milbank, Tweed, Hadley & McCloy LLP
One Chase Manhattan Plaza
New York, NY 10005-1413
Attn:   Risa Rosenberg, Esq.
        Dennis Dunne, Esq.
        Howard Kelberg, Esq.
Email:  rrosenberg@milbank.com
        ddunne@milbank.com
        hkelberg@milbank.com

**Counsel to Indenture Trustee (2013 Notes):**
Sullivan & Worcester LLP
Post Office Square
Boston, MA 02109
Attn:   Richard Hiersteiner
        Amy A. Zuccarello
Email:  rhiersteiner@sandw.com
        azuccarello@sandw.com

**Counsel to Indenture Trustee (2012 Notes and 2017 Notes):**
Chadbourne Parke LLP
30 Rockefeller Plaza
New York, NY 10112
Attn:   Marian Baldwin Fuerst
        Adrienne Duffy
Email:  mbaldwin@chadbourne.com
        aduffy@chadbourne.com

/s/ Jeff P. Prostok
Jeff P. Prostok

# Exhibit 1

## Proposed Order

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Case (Involuntary) |
| | ) | |
| VITRO ASSET CORP., VITRO | ) | Case Nos. 10-47470 (RFN-11), |
| CHEMICALS, FIBERS & MINING, LLC, | ) | 10-47472 (DML-11), 10-47473 (DML-11), 10-47474 (RFN-11), 10-47475 |
| VITRO AMERICA, LLC, TROPER | ) | 11), 10-47474 (RFN-11), 10-47475 |
| SERVICES, INC., VITRO PACKAGING, | ) | (DML-11), 10-47477 (DML-11), 10- |
| LLC, VVP HOLDINGS, LLC, AMSILCO | ) | 47478 (RFN-11), 10-47479 (DML-11), |
| HOLDINGS, INC., B.B.O. HOLDINGS, | ) | 10-47480 (RFN-11), 10-47481 (RFN- |
| INC., BINSWANGER GLASS CO, CRISA | ) | 11), 10-47482 (DML-11), 10-47483 |
| CORP., VVP FINANCE CORP., VVP AUTO | ) | (DML-11), 10-47484 (RFN-11), 10- |
| GLASS, INC., V-MX HOLDINGS, LLC, | ) | 47485 (DML-11), 10-47486 (RFN-11) |
| SUPER SKY PRODUCTS, INC., AND | ) | |
| SUPER SKY INTERNATIONAL, INC., | ) | |
| | ) | Joint Administration Pending |
| Debtors. | ) | |
| | ) | Hearing Date and Time: |
| | ) | November 23, 2010 at 9:00 a.m. |
| | ) | Objection Deadline: |
| | ) | November 23, 2010 at 9:00 a.m. |

ORDER GRANTING EMERGENCY MOTION OF THE PETITIONING
CREDITORS UNDER SECTIONS 105(a) AND 303(f) OF THE BANKRUPTCY CODE
CONDITIONING THE DEBTORS' USE OF PROPERTY

Upon the motion, dated November 18, 2010 (the "Motion"),[1] of the Movants for

an order pursuant to sections 105(a) and 303(f) of the Bankruptcy Code, Bankruptcy Rules 2002

and 6004 and Local Rules 2002.1 and 6004.1 requiring that section 363 of the Bankruptcy Code

apply (i) to certain discrete transfers, uses, sales or leases of property of Vitro Asset Corp. or any

of its affiliated debtors (collectively, the "Debtors"), which would materially alter the Debtors'

current assets and liabilities, and (ii) to any extraterritorial transfer, sale, distribution, acquisition,

trade, exchange or other disposition of any of the Debtors' respective assets or property currently

located within the territorial jurisdiction of the United States, in either case absent further order

---

[1]    Capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the Motion.

of the Court; and it appearing that the Court has jurisdiction over this matter; and it appearing

that notice of the Motion as set forth therein is sufficient, and that no other or further notice need

be provided; and upon all of the proceedings had before the Court upon application on notice;

and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED** that the Motion is hereby GRANTED; and it is further

**ORDERED** that section 363 of the Bankruptcy Code applies to any transfer, use,

sale or lease of property, which would materially alter the Debtors' current assets and liabilities,

and to any extraterritorial transfer, sale, distribution, acquisition, trade, exchange or other

disposition of any of the Debtors' respective assets or property currently located within the

territorial jurisdiction of the United States, in either case absent further order of this Court; and it

is further

**ORDERED** that, pursuant to section 303(f) of the Bankruptcy Code, the Debtors

shall be prohibited from transferring, selling, distributing, acquiring, trading, exchanging or

otherwise disposing of any of their respective assets or property that would materially alter the

Debtors' current assets and liabilities absent a showing under section 363 and further order of

this Court; and it is further

**ORDERED** that, pursuant to section 303(f) of the Bankruptcy Code, the Debtors

shall be prohibited from extraterritorially transferring, selling, distributing, acquiring, trading,

exchanging or otherwise disposing of any of the respective assets or property currently located

within the territorial jurisdiction of the United States absent a showing under section 363 and

further order of this Court; and it is further

**ORDERED** that, pursuant to section 303(f) of the Bankruptcy Code, the Debtors

shall be prohibited from voting any claims the Debtors might have against Vitro, participating in

the Solicitation, participating in a Vitro Concurso, or participating in any other transaction that

might materially affect the Debtors' prepetition capital structure absent a showing under section

363 and further order of this Court; and it is further

      **ORDERED** that this Court shall retain jurisdiction over any and all matters

arising from or related to the implementation or interpretation of this Order.

      Signed this ____ day of _____, 2010.


           _____
           Honorable Russell F. Nelms
           United States Bankruptcy Judge

      # # # End of Order # # #

**PREPARED BY:**

Jeff P. Prostok
State Bar No.  16352500
Lynda L. Lankford
FORSHEY & PROSTOK LLP
777 Main St., Suite 1290
Ft. Worth, TX  76102
(817) 877-8855

    -and-

Thomas E Lauria
State Bar No. 11998025
J. Christopher Shore (pending admission pro hac vice)
John K. Cunningham (pending admission pro hac vice)
Richard Kebrdle (pending admission pro hac vice)
WHITE & CASE LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 819-8200

ATTORNEYS FOR THE PETITIONING CREDITORS AND
THE AD HOC GROUP OF VITRO NOTEHOLDERS